FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

12 MAR 14 PM 2:35

Georgia Eileen Shaffer,

Plaintiff,

v.

Case No: 8:12cv559 T35TBM

THE UNITED STATES OF AMERICA,

Defendant,

COMPLAINT

Georgia Eileen Shaffer of: 15666 49th Street North, Lot 1098, Clearwater, FL 33762 (727) 492-9044, herein-after referred to as ["Plaintiff, Her, She and or I"] sues, pro-se, THE UNITED STATES OF AMERICA, c/o Department of State, 2201 C Street Northwest, Washington, DC, Washington, DC, (202) 647-4000, here-in after referred to as ["Defendant"] and alleges:

1. This action is brought by Plaintiff against Defendant pursuant actions as detailed in Federal Tort Claim Act ["FTCA"] Plaintiffs' filing: no. 516/02 and acknowledge by Defendant to settle no. 021B: 14876.

2. As Plaintiff is a resident of Florida, this Court has jurisdiction over this claim and venue is proper in the Middle District of Florida, Tampa Division, because the events or omissions giving rise to this claim occurred in St. Petersburg and / or Tampa, Florida.

3. At all times material to this action, Defendant s' Veterans Administration Medical Center Bay Pines herein after referred to as ["VAMCBP"] is located in St. Petersburg, Florida and was owned, operated or paid for by Defendant as also were it's Tampa, Florida Outside Contracted Medical Physicality's, herein after referred to as ["OCMP "] for consultations' and/or surgical procedures'.



TPA-10159
$350

4. At all times material to this action, *Defendants' VAMCBP* held itself out as being a full service hospital able to provide proper medical, nursing, diagnostic, and other medical services at it's or through it's *OCMP* necessary to properly evaluate, diagnose and treat patients such as *Plaintiff*.

5. At all times material to this action, *Defendants' VAMCBP* hospital, Medical, Nursing staff and it's *OCMP* who treated *Plaintiff*, including but not limited to *VAMCBP* Doctor's: Baker, Bilotta, Hakki and or *Defendants' OCMP* Florida Orthopedic Institute, herein after referred to as [ *"FOI"* ], 13020 Telecom Parkway North, Tampa Florida, 33637 (813) 978-9700 , most notably *FOI's Dr. Thomas Bernasek* were acting within the course and scope of their employment with or contract compensation by and or for *Defendant*.

6. At all times material to this action, *VAMCBP, / OCMP FOI* personnel owed a duty to *Plaintiff* to provide her with medical care and treatment which met the prevailing professional standards of care in treating patients.

7. At all times material to this action, *Defendants': VAMCBP, OCMP, FOI and TGH personnel* owed a duty to *Plaintiff*, to provide her with valid medical record data which met the prevailing professional standards of record keeping / reporting for patients.

8. All of the conditions precedent for bringing this lawsuit have occurred or been waived.

**NEGLIGENCE OF UNITED STATES OF AMERICA**

9. *Plaintiff* re-alleges and incorporates by reference paragraphs 1 through 8 above, that upon or after:

10. February 09, 2007 *Defendants' VAMCBP* physician, Dr. John Baker did violate his Hippocratic oath and *Defendants'* standards of care of by causing *Plaintiff* emotional suffering / distress, stating during her pre-op interview: *"Certain members of my team have a problem with you being transgendered"*, leaving *Plaintiff* with serious reservations' about her upcoming surgery;

11. March 03, 2007, three days after the above surgery, *Plaintiff*, with nurse's assistance, while attempting to get out of bed for the first time, her Right hip dislocated, where upon she was sedated, rushed to surgery to repair the failed hip system. The following day, no one especially, Dr. Baker could / would explain why her hip dislocated;

12. April 02, 2007, while at home, while attempting to sit down on her bed, *Plaintiff's* Right hip dislocated a second time, where upon she called 911 to be transported to *Defendants' VAMCBP* hospital where another surgical repair of her Right hip was performed. As with the above March 03 incident, no explanation was given as to why her hip dislocated a second time;

13. May 22, 2007, during a post-op interview, Dr. Baker failed to respond to *Plaintiffs'* request to examine the two table-tennis-ball-size reddish-welts on her Right hip socket area as-well-as the two sharp pointed items protruding on either side of said socket. From approximately six feet away, Dr. Baker stated: "*Pointed objects are staples and will come out by themselves, I will give you another type of antibiotic and increase the morphine for pain*", whereupon he then got up and left;

14. May 22, 2007 to December 04, 2007, *Plaintiff* made repeated trips by to *Defendants' VAMCBP* Orthopedic clinics [OC] Emergency Room [ER] seeking treatment for the increasing pain and redness in her Right hip socket area whereupon she only received a change of antibiotics, an increase in the amount of morphine dosage and additional narcotic pain medications;

15. December 04, 2007 *Plaintiff*, unable to tolerate the extreme pain in her Right hip, clearly identifiable by the (2) tennis ball size welt's on the outside area of her Right hip socket, she sought help at the *Defendants' VAMCBP ER* where she was examined / treated by Dr. Sam Hakki who was shocked to see the condition of her right hip, whereupon he:

15. [Continued]

(a) Removed (two) – one and half inch long by approximately one sixteenth of inch wide pieces of plastic from either side of her right hip socket area where two tennis ball size infections were quite visual, whereby he ordered;

(b) Ordered blood screening to identify the type of infection observed on her right hip;

(c) Ordered a CT scan of her lower spine, pelvic and hips whereby failure of her *Right hip system* was confirmed and she was admitted to the hospital for surgical correction of the above hip failure / infection;

16. December 27, 2007 *Plaintiff's'* mistrust of Dr. Baker prompted her to request another physician whereby she was transferred to *Defendants' VAMCBP OCMP FOI*;

17. On / about January 15, 2008*:* F*OIs'* senior Hip surgeon *Dr. Thomas Bernasek* observed from *VAMCBP* and *FOI* medical data had *Plaintiff* not sought medical attention on December 04, 2007 she could have died from the deteriorating hip condition and or the MRSA infection, prompting *Defendants' OCMP Dr. Bernasek'* to schedule *Plaintiff's surgery* for removal of her failed Right hip system as-soon-as feasibly possible. [ Dr. Bernasek's comment and action confirmed *Plaintiffs*' February 2007 feelings that Dr. Baker did not have her best interest / welfare in mind prior to, during and after aforementioned February 27, 2007 surgery];

18. On February 12, 2008*: Defendants' VAMCBP OCMP through TGH and FOI* scheduled *Plaintiff's surgery* to remove aforementioned failed Right hip at *TGH* where after it was documented she was unable to walk or move her Right leg due to the total Right hip removal thereafter she was transported to *Defendants' VAMCBP* for further observation and rehabilitation where nursing staff documented that she:

(a) Was unable to walk unassisted;

(b) Had a high pain level due to the above surgery;

18. [Continued]

(c) Required a strap around her Right ankle to transfer herself to and from her bed and / or wheel chair;

(d) Required personnel assistance bathing, grooming and daily special I.V. antibiotics for the MRSA infection;

(e) Due to Dr. Baker February comment, requested and was granted discharge to in-home nursing;

19. On / about and after February 28, 2008 *Plaintiff* s' close friend, Col. Robert Reynolds RN, USAF, VAMCBP Retired, 204 176th Terrace Drive, East Redington Shores, Florida 33708, (727) 397-8432, who had visited *Plaintiff* during the previous twelve months, was amazed she was still alive upon seeing her transferring herself to / from her bed and wheel chair with a rope tied around her right leg stated: "*Many people would have blown their brains out rather than put up with what you have had to endure over the past year*".

20. March 02, 2008, while under home care nursing, *Plaintiff suffered* a severe drug anaphylactic shock as a result of antibiotics being intravenously administrated, whereupon she was readmitted to *Defendants" VAMCBP* where she was semi-comatose for almost three weeks and almost died.

21. May 22, 2008, *Plaintiff* was readmitted to *Defendants' VAMCBP OCMP TGH* for reconstruction of her Right hip by *FOIs'* Dr. Thomas Bernasek on that date. After two days of observation she was transferred to *VAMCBP* for further observation and ambulatory instruction prior to being discharged home for convalescent care. While at *Defendants' VAMCBP Plaintiffs'* high pain level, as a result of repeated hip surgeries was documented whereupon her pain medication dosages of: *Morphine, Hydrocodone, Methocarbonal, and Gabaplaten* were increased prior to her release home for further convalesces.

22. From May 22, 2008 up to the date of this complaint, *Plaintiff* continued to seek help from *Defendants' VAMCBP, OCMP,* and *FOI* only to be told by one agency you have be seen by other - who would reply there is nothing we can do for you;

23. From December 20, 2009 through January 04, 2010 sought an independent medical experts advise and treatment from [semi retired] Dr. Steven Shiver, Neurologist, DO, DC [to name a few of his degrees] 5063 Highway 21, Kingston, Arkansas 72742 (479) 665-2544, who, after exhaustively reviewing *Plaintiffs'* Left and Right Hip replacement records and performing a thorough examination was extremely upset over the second-rate manner of treatment she had received, stating: "They knew they messed up, as they offered an out of court financial settlement";

24. March 17, 2010, *Plaintiff* requested a copy of *Defendants' VAMCBP OCMP FOI-TGH OR* report of her May 22, 2008 Right hip reconstruction and upon receipt thereof was shocked to see the *serial numbers* of the newly implanted Right hip parts had been *redacted and* when questioned, *Defendants' VAMCBP OCMP TGH* records persons said, "*We can not put those numbers in to our computers as it would mess up our systems!*" whereby *Plaintiff believes* that statement maybe the reason that her Right hip system began to fail in late 2009 and has continued to deteriorate as-of the date of filing this complaint.

25. On June 28, 2010, *Defendants' VAMCBPRCO* Legal Counsel, Ms LeTonya Moore, summarized: "*This claim does entail a number of uncertainties likely to present some litigation risks to the United States which we feel justifies pursing efforts to attain an amicable resolution of this claim. Upon consideration of the foregoing, we are willing to offer $50,000.00 in settlement of your administrative claim*" thereafter *Plaintiffs* counter offer of Four Hundred Thousand Dollars, US [$400,000.00 usd] was verbally rejected *whereupon Plaintiff* was instructed to appeal with *Defendants'*, Washington, DC Office of General Counsel, herein after referred to as [OGC];

26. June 28, 2010, *Plaintiff* reaffirmed her *initial* administrative claim with *Defendants' OGC* wherein she sought Twenty Million Dollars, US [$20,000,000.00 usd] in compensation for documented:

(a) Problems after surgery or a medical procedure wherein her Right hip dislocated twice without explanation by / from *Defendants' VAMCBP* and/or FOI orthopedic department staff, thereby causing her prolonged mental duress and continued physical pain and suffering;

(b) Objects being left in after surgery by *Defendants' VAMCBP* orthopedic department staff - (2) 1.5 inch plastic strips [*Defendants' VAMCBP ER report December 04, 2007*] thereby causing her prolonged mental duress and continued physical pain and suffering;

(c) Failure of and delay in diagnosis and treatment of *MRSA* Infection by D*efendants' VAMCBP* orthopedic staff - May 07 up to December 04, 2007 thereby causing her prolonged pain, suffering and possible death;

(d) Wrong antibiotic drug administered by experimentation rather than proper cultural testing for type of infection, by *Defendants' VAMCBP* orthopedic department staff;

(e) Extreme pain, suffering and mental anguish having to be endured from February 27, 2007 up to and through the date of this complaint;

(f) TGH redaction of the May 22, 2008 Right hip replacement OR report whereupon and up to the date of this complaint, said hip system continues to fail and cause *Plaintiff* unwarranted pain, suffering and mental duress;

(g) Gender discrimination by *Defendants' VAMCBP* orthopedic department person, Dr. John Baker as detailed from his February 2007 pre-op comment.

27. September 14, 2012, *Defendant* acknowledged *Plaintiff's* claim, verbally offered: Two Hundred Ten Thousand, Dollars, US [$210,000.00 usd], *Plaintiff* countered with: Four Hundred Thousand, Dollars, US [$400,000.00 usd], summarily rejected by *Defendant* OGC legal counsels, Ms. Joan Weber who instructed *Plaintiff's* to file suit in Federal court against The United States of America;

28. February 27, 2007 up to and through present day, As a direct and proximate result of the negligence of *Defendant, Plaintiff* has sustained severe neurological injury, including deformity and shortening of both legs, loss of [2] inches of height and spinal cord infarction requiring additional medical care and treatment she has paid for, and is facing additional hospital admission and additional surgical procedures for repair / reconstruction of her Left and Right hips and spinal cord;

29. February 27, 2007 up to present day, As a further direct and proximate result of the negligence of *Defendant, Plaintiff* has sustained severe physical and emotional injuries and resulting pain and suffering, disability, disfigurement, mental and emotional anguish, loss of capacity for the enjoyment of life, additional injuries, and aggravation of pre-existing conditions. The losses are either permanent or continuing in nature, and *Plaintiff* will suffer such losses in the future.

30. July 23, 2009 up to date of this Complaint, *Defendant* s' *VAMCBPRCO* and *OGC* legal representatives as witnessed by *Plaintiffs'* personal friend, *Ms. Amy David 6033, 38th Avenue North, St. Petersburg, Florida (727)641-0438*, will confirm: *Plaintiff* was and continues to be misdirected by *Defendant*;

31. March 10, 2012, Dr. Steven Shivers' final summation: "You have a condition that is ongoing, progressive beyond the hips, into your spine, brain and organs so as to be prone to strokes and death if relief is not arriving in a timely manner", reinforcing *Plaintiffs* February 19, 2007 claim,

**WHEREFORE**, *Plaintiff* demands judgment for damages and the costs of future treatment actions against the *Defendant* in the amount of: Twenty Million Dollars, US [$20,000,000.00 usd].

________________ March 13, 2012
Georgia Eileen Shaffer, Sgt, WOC
AF / Army Retired, Disabled

________________ March 13, 2012
Doni Wright. Witness